STATE OF IOWA v. FRANCIS HAMILTON, Appellant.

**Witnesses:** OBJECTION TO QUALIFICATION: REVIEW ON APPEAL. Objection to the qualification of witnesses to testify to the reputation of a party to an action can not be raised for the first time on appeal.

**Same:** WEIGHT OF EVIDENCE. The fact that a witness testifying to the
2    reputation and character of one accused of crime does not base
his evidence on any direct knowledge of circumstances or inci-
dents goes merely to the weight of his evidence.

*Appeal from Decatur District Court.*—HON. H. K. EVANS,
Judge.

WEDNESDAY, JULY 5, 1911.

DEFENDANT was accused of murder in the second de-
gree, and convicted of manslaughter. He appeals. *Af-
firmed.*

*C. W. Hoffman* and *V. R. McGinnis,* for appellant.

*H. W. Byers,* Attorney-General, *Chas. W. Lyon,* As-
sistant Attorney-General, and *Geo. W. Baker,* County At-
torney, for the State.

LADD, J.—In the afternoon of September 27, 1909,
several persons were near the park at Davis City. Of
these the accused and his cousin, Samuel Hamilton, were
engaged in a game of high spades, when the latter seized
the former about the neck and struck him twice. Whether
the accused had cheated is in dispute, as is also whether
Samuel drew a knife and threatened to cut his antagonist's
throat. The accused pulled away and immediately went
to the business portion of the village, and purchased a
thirty-eight caliber revolver at one store and cartridges at
another, loaded the revolver, and started back toward the
park. Meeting deceased near the bridge, he fired twice,
one of the bullets passing through Samuel's head and caus-
ing death in eighteen hours. The deceased was unarmed,
and his hands were in his pockets after being shot. Prob-
ably he was reputed a dangerous and quarrelsome man
with some reason, and the accused testified that as he ap-

proached him on his return he tendered back the money he had won from him at high spades, and proffered friendship, but that deceased responded that it was not the money, but the accused, he was after, and reached for his pocket, and that the defendant fired upon him to save his own life. The defendant claimed to have been on his way home, but must have known that he would meet deceased, and was shown to have made no response to those accosting him when going to and returning from the stores. His story was somewhat corroborated by the testimony of one Wheeler, who, in turn, was discredited by evidence that he had made contradictory statements, while the theory of the state that deceased was deliberately shot down in cold blood was confirmed by the story of a witness whose reputation for veracity was assailed, and by several witnesses who did not notice any demonstration by deceased. Just how the jury came to ignore the circumstances that deceased fell with his hands in his pockets, silent but uncontroverted evidence that the testimony that he reached for his pocket was untrue, and the deliberate purpose manifested in the procurement and immediate use of a deadly weapon, notwithstanding defendant's story that he was arming himself for protection, is not perceived unless it be that they softly yielded to the skillful presentation by able counsel of the situation of an unfortunate wife and four children of the accused. An examination of the record demonstrates that the first mistake in the procedure was that of the grand jury in not indicting defendant for murder in the first degree, instead of the second degree; the second, that of the petit jury in not returning a verdict convicting him of the crime charged, instead of manslaughter; and the third, that of the state in not insisting upon the prompt prosecution of this appeal.

None of these, however, can now be corrected. The only errors presented relate to the qualification of witnesses who testified to the defendant's reputation as a peaceable

and law-abiding citizen, to his reputation for truth and veracity, and to his character for morality, and yet no objection seems to have been made thereto, nor motion to strike the evidence adduced from the record. There having been no ruling of the trial court on which to predicate error, there is no error to review. Even were such review possible, however, the evidence drawn out on cross-examination tending to impair the qualification of the witnesses bore only on the value or weight to be attached to their opinions. If one has lived in the same community with another many years and during that time been acquainted with him, he may know his reputation or character, although not having heard of particular incidents or circumstances affecting these. At least, it can not be said to be an abuse of discretion to refuse to strike the testimony of such a witness from the record, and allow it to be considered by the jury for what it is worth. The accused has no ground for complaint, and the state under the law may not complain of the outcome of the trial. It does not follow, however, that the accused will pay the lawful penalty for the crime he has committed. Its inadequacy is not to be attributed to any error of the trial court, but to susceptibility of the jury, who, in disregard of irrefutable facts, allowed themselves to be cajoled into a sympathetic extenuation of a premeditated murder. *The judgment is affirmed.*